IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

LARISSA L. HEIDERSCHEIDT                                                                    PLAINTIFF

v.                              Civil No. 10-3058

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                              DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

  Plaintiff, Larissa Heiderscheidt, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental insurance benefits ("SSI") Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I. Procedural Background:**

  The plaintiff filed her application for SSI on December 7, 2006, alleging an onset date of February 11, 2006, due to osteoarthritis, sprains and strains, degenerative disk disease, organic mental disorder, mood disorder, obesity, and asthma.  Tr. 104-107, 160-167.  Her applications were initially denied and that denial was upheld upon reconsideration.  Tr. 78-80, 84-85.  Plaintiff then made a request for a hearing by an Administrative Law Judge ("ALJ").  An administrative hearing was held on July 3, 2008.  Tr. 18-59.  Plaintiff was present and represented by counsel.

  At this time, plaintiff was 35 years of age and possessed a high school education and two years of college.  Tr. 18-19, 129, 134.  Although she had previously worked, the ALJ concluded that Plaintiff had no past relevant work.  Tr. 18-23, 76, 138, 172-175.

On November 13, 2008, the ALJ found that plaintiff's osteoarthritis, sprains and strains, degenerative disk disease, organic mental disorder, mood disorder, obesity, and asthma were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 70-72. After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform light work involving occasional climbing ramps and stairs, stooping, bending, crouching, crawling, kneeling, and balancing and no exposure to concentrated dust, fumes, smoke, chemicals, and noxious gases. Tr. 72-76. From a mental perspective, he also concluded Plaintiff should perform jobs involving few variables that required non-complex and simple instructions; little judgment, concrete, direct, and specific supervision; involved routine and repetitive tasks that could be learned by rote; and, involved only superficial contact with the public and co-workers incidental to the work performed. With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a housekeeper, poultry eviscerator, and deboner. Tr. 76-77.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on April 22, 2010. Tr. 1-3. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 8, 9.

II.   **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d

964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the

3

final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Evidence Presented:

Records dated prior to the relevant time period indicate that Plaintiff had been treated for back pain, numbness in her hands, elevated blood pressure, and anxiety due to an abusive boyfriend. Tr. 214-226. Plaintiff was prescribed pop up splints, Ibuprofen, and Ultram. Tr. 214-226. As a child she had also reportedly fallen down a flight of stairs, sustaining an injury at the C3 level, resulting in paralysis for one week. Tr. 244.

Medical treatment notes reveal that Plaintiff began chiropractic treatment with Dr. Joseph Long in 2005 for lower back pain. Tr. 298-306. In May 2006, she returned with complaints of neck and continued lower back pain. She had reportedly been involved in an automobile accident in February, resulting in additional lower back pain. Her diagnoses were neck, thoracic spine, and lumbar spine strain. Tr. 230-231. On May 18, 2006, he noted that all of her symptoms were "slightly improved." Tr. 231-232. Plaintiff sought treatment consistently for approximately seven sessions. Tr. 233-236.

On June 1, 2006, Plaintiff presented at the Mountain Home Christian Clinic ("MHCC") with complaints of depression. Tr/ 282. However, she left without being treated, stating that she was "okay." Tr. 282.

Notes from MHCC the indicate that Plaintiff requested a prescription for Prozac on June 5, 2006. Tr. 269.

On June 8, 2006, Plaintiff sought emergency treatment for back pain. Tr. 209-211. She was involved in a motor vehicle accident in February, and had been receiving chiropractic

treatment for lower back pain. Plaintiff had reportedly undergone multiple x-rays and evaluations, but her pain continued. She stated that it hurt on the right side over her gluteal area. Plaintiff also complained that, at work, she sat for long periods of time, and this seemed to aggravate her pain. An examination revealed tenderness to palpation in her lower lumbar to SI area. However, she had no neurological deficits and a normal gait. The doctor advised her to confer with her primary care physician and prescribed a Medrol Dosepak, Flexeril, and Ultram. Tr. 209-211.

An MRI of Plaintiff's lumbar spine dated June 9, 2006, revealed chronic end plate changes at the L4-5 level and disk bulging bordering on protrusion. Tr. 198, 212-213.

On June 13, 2006, Plaintiff was treated by Dr. Lonnie Robinson for back pain. Tr. 199. Plaintiff reported that her pain was chronic, but had recently become worse due to physical abuse by her husband. Initially, she had some radiation to the legs, but none currently. An examination revealed slight tenderness in the paraspinal muscles and a somewhat limited range of motion, but no muscular strength deficits and no neurologic deficits. Dr. Robinson also noted that the MRI showed some degenerative changes and possible nerve root impingement, but he did not find this to be consistent with her pain. Accordingly, he diagnosed Plaintiff with chronic back pain, degenerative disk disease of the back, and questionable neural impingement. Since she did not have radiculopathy syndrome, he did not recommend that she pursue lumbar epidural steroid injections ("LESI"). Instead, he prescribed Naprosyn, back strengthening exercises, and continued chiropractic care, as this seemed to be helping her symptoms. Tr. 199.

On June 21, 2006, Plaintiff returned for chiropractic treatment with complaints of neck and back pain. Tr. 236-239. Treatment continued until July 18, 2006. Dr. Long noted slight to moderate improvement at each appointment. Tr. 236-239.

On October 18, 2006, Plaintiff returned for chiropractic intervention from Dr. Long. Tr. 244-245. She reported lumbar back and sacral region pain that radiated into her anterior thigh and lower leg on the right. Plaintiff indicated that she was in the process of building a new house and was doing a lot of lifting and bending. Specifically, she was moving broken concrete block pieces. She had also been kicked in the lower back a few weeks prior. Dr. Long recommended she be treated three times per week for two weeks, then twice weekly for four weeks, and once weekly for six weeks. He noted her prognosis to be good. Tr. 244-245. However, it appears Plaintiff returned for only one additional treatment. 239, 245-246.

On November 28, 2006, Plaintiff presented in the ER with lower back pain and pain in her right foot. Tr. 200-201, 204-208. She had reportedly slipped on water and fallen, injuring her ankle. X-rays revealed no fracture. Accordingly, Plaintiff was diagnosed with a severe right ankle sprain and prescribed a splint and crutches. Tr. 204-206. She was also administered Toradol, Norflex, and Decadron injections and prescribed Motrin and Lortab. Tr. 200-201, 204-208.

On December 4, 2006, Plaintiff sought emergency treatment for significant lower back pain. Tr. 202-203. She had been on crutches since being diagnosed with an ankle sprain and was supposed to be in a splint. Plaintiff felt that her use of the crutches was causing her back pain. The doctor noted that her MRI had shown very mild disk bulging at the L4-5 level. She indicated that her pain was radiating down her thighs, worse on the right than the left. However, no loss of bowel or bladder function or motor deficit was reported. Plaintiff continued to have some mild pain in her left ankle. Although she had fallen the previous week, resulting in the injury to her ankle, Plaintiff did not feel this affected her back. Her history of asthma treated on an as needed basis was documented, as was her smoking habit of one half package of cigarettes per day. No current medications were reported, as she had taken her last Lortab prescribed for her ankle. An

6

exam revealed that Plaintiff was alert, anxious, and appeared to be in moderate distress. Her lumbar spine had no vertebral point tenderness, but she was exquisitely tender in the paraspinous muscles on the right. The doctor was unable to palpate the spine. Plaintiff had pain with rotation of her back and good plantar and dorsiflexion. Because of her sprained ankle, the doctor did not stress the foot as much, but he did note no deficits through the thighs and upper leg. He diagnosed Plaintiff with lower back pain, and ordered injections of Toradol, Norflex, and Decadron. She was also advised to continue the Motrin, Flexeril, and Ultram at home. Further, her advised her to stay off work for the next couple of days. Tr. 202-203.

On January 24, 2007, treatment notes from Dr. Long indicate Plaintiff sought out chiropractic treatment for neck and lower back pain. Tr. 228-231, 241-243. She alleged that her current pain was caused by being kicked in the lower back a few weeks earlier. Dr. Long diagnosed her with degeneration of the lumbar or lumbosacral intervertebral disk, closed dislocation of the lumbar vertebra, other symptoms referable to the back, closed dislocation of the sacrum, thoracic and lumbosacral neuritis and radiculitis, and lumbosacral sprain. Tr. 228-231, 241-243.

On February 13, 2007, Plaintiff underwent a neuropsychological evaluation with Dr. Vann Smith. Tr. 257-260. We note at the onset, however, that Dr. Smith did not review any of Plaintiff's medical records, rather he derived her clinical history directly from Plaintiff. Plaintiff reported a history of asthma, degenerative disk disease, episodic hypertension, sleep apnea, and multiple closed head injuries (secondary to both abuse/assaults and a motor vehicle accident). She stated that she suffered cervical trauma at age 11, secondary to a fall, following which she was allegedly paralyzed from the neck down for some time. Plaintiff now reported chronic, frequently immobilizing pain in her back, hips, lower extremities, weight bearing joints, and neck, which she

rated as a 9 on a 10-point scale. She also reported a history positive for counseling for depression. Dr. Smith noted that her memory was impaired, her judgment and insight intact, her affect somewhat muted but flexible, and her mood mildly anxious and dysthymic. Her intelligence was estimated to lie within the normal range, and her thought processes were functional to concrete in quality. Following an interview and the administration of neuropsychodiagnostic tests, Dr. Smith concluded that Plaintiff's responses were consistent with the presence of diffuse, bilateral organic brain dysfunction of moderate severity and static to slowly progressive velocity. He then diagnosed Plaintiff with cognitive dysfunction, and noted that her capacity to carry out routine daily activities in a consistent manner was impacted, rendering her disabled. Tr. 257-260.

Dr. Smith also completed a mental RFC assessment. Tr. 261-265. He assessed Plaintiff with a global assessment of functioning score of 45 and noted her prognosis to be fair. Dr. Smith opined that Plaintiff would be unable to meet competitive standards with regard to remembering work-like procedures, maintaining attention for two hour segments; maintaining regular attendance and being punctual within customary, usually strict tolerances; sustaining an ordinary routine without special supervision; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; understanding, remembering, and carrying out detailed instructions; setting realistic goals or make plans independently of others; dealing with the stress of semiskilled and skilled work; traveling in unfamiliar place; and, using public transportation. He also found her to be seriously limited, but not precluded from working in coordination with or proximity to others without being unduly distracted, responding appropriately to changes in a routine work setting, dealing with normal work stress, and being aware of normal hazards and taking appropriate precautions. Further, Plaintiff was found to be limited but satisfactory with

regard to understanding, remembering, and carrying out short, simple instructions; making simple work-related decisions; accepting instructions and responding to criticism from supervisors; getting along with co-worker or peers without unduly distracting them or exhibiting behavioral extremes; interacting appropriately with the general public; maintaining socially appropriate behavior; and, adhering to basic standards of neatness and cleanliness. Dr. Smith indicated that Plaintiff's impairments would likely cause her to miss more than four days of work per week. Tr. 261-265.

On May 3, 2007, Plaintiff returned to MHCC stating that her depression symptoms had improved and that she felt better. Tr. 281. She reported no thoughts of suicide. Dr. Caleb Gaston noted that Plaintiff was doing "fantastic" on Buspar and Prozac. Tr. 281, 283.

On May 17, 2007, Plaintiff complained of a cough and congestion, reporting a history of allergies and asthma. Tr. 279. An examination revealed a tight cough, but no wheezing. Dr. Paul Wilbur at MHCC prescribed Singulair and a Proventil inhaler. Tr. 279.

On June 6, 2007, Plaintiff was prescribed patches to help her quit smoking. Tr. 278.

On July 16, 2007, Plaintiff reported that her depression was better. Tr. 277. She asked for a refill of Buspar to treat her anxiety. Tr. 277.

On September 20, 2007, Plaintiff indicated that she wanted to quit smoking. Tr. 276. She was prescribed Chantix. At this time, her blood pressure was a little elevated at 131/89. Tr. 276.

On November 12, 2007, Plaintiff returned to Dr. Long's office with additional complaints of sacral region back pain on the right that radiated down into her leg. Tr. 289-293. However, records indicate that she had been picking up and moving broken concrete block pieces all day on Saturday and was experiencing severe pain by the evening. It was recommended that Plaintiff return for treatment three times per week for two weeks, twice per week for four weeks, once per

AO72A
(Rev. 8/82)

week for six weeks, and then once every two weeks for eight weeks. Tr. 289-293. Plaintiff returned for treatment on November 14 and November 19. Tr. 293-294.

On December 6, 2007, Plaintiff was treated at MHCC for pain in her lower back when she sneezed or coughed. Tr. 272. She also reported stiffness in her lower back, difficulty arising for a seated position, and difficulty getting out of the car. Bilateral tenderness in the paraspinal muscles was noted on exam. Plaintiff was diagnosed with chronic lumbar strain and prescribed physical therapy, NSAIDs, muscle relaxers, Tramadol, and Fexofenadine. Tr. 272, 274.

On February 7, 2008, Plaintiff requested a refill on her Tramadol prescription. Tr. 271.

On May 1, 2008, Plaintiff was treated at the MHCC for chronic back pain and medication refills. Tr. 270. Her blood pressure had reportedly been good at home, with no history of hypertension. Plaintiff was diagnosed with chronic lower back pain and her medications were refilled. A physical therapy consult was also ordered, and the doctor discussed the possibility of LESIs. Tr. 270.

In an undated letter, Dr. Joseph Long of Twin Lakes Chiropractic Clinic indicated that he had treated Plaintiff off and on over the last couple of years for severe pain in the lower back. Tr. 227. Generally, after a series of treatments, Plaintiff's pain would become more tolerable. She seemed to be having chronic problems with this and her x-rays reportedly showed degeneration of the L5 disk. He considered her condition to be advanced, given her age. Dr. Long noted that she had sustained an injury to her lumbar spine, causing her pain, and resulting in a facet jamming injury at the L4 and L5 levels. In his opinion, Plaintiff was able to do some work, however, her symptoms tended to "flare-up" and render her incapacitated for several days at a time. Given her condition, he was of the opinion that it was unlikely she would be able to tolerate standing for any

length of time more than 30-40 minutes at one time. Her ability to lift would also be limited. Tr. 227.

IV. **Discussion:**

Plaintiff contends that the ALJ erred by failing to properly determine Plaintiff's credibility and apply the *Polaski* standards, failing to develop the record by not sending her for a consultative psychological examination of her mood disorder, failing to give Dr. Long's opinion the weight it was entitled to, and failing to properly consider Dr. Smith's assessment. We will begin our analysis of this case by reviewing Plaintiff's subjective complaints and the evidence presented in support of her claims.

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

11

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

We note that plaintiff has been diagnosed with osteoarthritis, degenerative disk disease, and sprains and strains. According to her own reports, Plaintiff had been involved in an automobile accident in February 2006, resulting in lower back and neck pain. An MRI of Plaintiff's lumbar spine dated June 9, 2006, revealed chronic end plate changes at the L4-5 level and disk bulging bordering on protrusion. Tr. 198, 212-213. However, Dr. Robinson noted that Plaintiff's subjective complaints of pain were not consistent with these findings.

It also appears Plaintiff primarily sought out chiropractic treatment for her condition, and even reported that this treatment was helpful.[1] Tr. 199. *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). Although additional exams did reveal some range of motion limitations and Plaintiff was prescribed some pain medication, no neurological deficits were ever noted and Plaintiff was found to have a normal gait. Tr. 199, 290-211. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain). Additionally, on several occasions,

---

[1] We also note that Plaintiff did not follow Dr. Long's treatment recommendation regarding longevity and frequency of treatment. Tr. 239, 245-246, 293-294. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

12

Plaintiff reported to Dr. Long that she was building a new house and had been moving broken concrete blocks, causing her back pain to recur. Tr. 244-245, 293-294.

Records do reveal that Plaintiff was treated for a sprained ankle in November 2006. However, it appears that she was treated for this injury and made a successful recovery. There is no evidence to indicate Plaintiff suffered from a permanent impairment of the ankle. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). In fact, the only medical source to really comment on Plaintiff's RFC indicated that she could not tolerate standing for any length of time more than 30-40 minutes at one time, based on her back and neck pain, and that her ability to lift was also be limited. Tr. 227. He did not, however, indicate how much Plaintiff could lift or find her to be disabled. *See Baldwin v. Barnhart*, 349 F.3d 549, 557 (2003) (physicians noted few abnormalities, and none of Plaintiff's independent physicians restricted or limited P's activities).

Plaintiff also alleges disability based on organic mental disorder and mood disorder. We do note that Plaintiff was diagnosed with and prescribed medication to treat depression and anxiety in June 2006. Tr. 282. However, by May 2007, she reported that her condition had improved with medication. Tr. 277, 281. In fact, Dr. Gaston noted that Plaintiff was doing "fantastic" on Buspar and Prozac. Tr. 281, 283. The only other evidence indicating that Plaintiff suffered from an organic mental disorder or mood disorder is the evaluation and assessment of Dr. Smith. As previously noted, Dr. Smith's assessment is based solely upon Plaintiff's own complaints and medical history reports. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ may give less weight to a medical opinion that is based largely on subjective complaints rather than on objective medical evidence); *Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005) (holding that the record supports ALJ's conclusion that treating physician's diagnosis and

13

impressions were based largely on the plaintiff's subjective complaints with little objective medical support). He reviewed no medical records prior to rendering his decision. Therefore, given that the remaining evidence of record does not support Dr. Smith's extremely limiting mental RFC assessment, we do not find that it is entitled to significant weight.

Also detrimental to Plaintiff's claim of disability based on a mental impairment is the fact that she did not seek out mental health treatment for her impairments. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment). She told Dr. Smith that she had undergone counseling for depression, but the record contains no evidence to support her claim. Accordingly, although we agree with the ALJ's conclusion that Plaintiff's mental impairments were severe and did impact her ability to perform work-related activities, we do not find them to be disabling.

Records do indicate Plaintiff was also suffering from obesity, however, none of her treating doctors suggested her weight imposed any additional work-related limitations, and she did not testify that her weight imposed additional restrictions. *See Anderson v. Barnhart,* 344 F.3d 809, 814 (8th Cir. 2003). Accordingly, we do not find this impairment to be disabling.

Likewise, although we note Plaintiff's diagnosis of asthma, records also indicate that Plaintiff was treated for this on an as needed basis. *See Edwards*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). And, we can find no evidence to indicate that this condition necessitated emergency treatment or hospitalization during the relevant time period, such that it would have interfere with her ability to perform work-related activities. Further, we note

14

that Plaintiff continued to smoke cigarettes, in spite of suffering from this impairment. Accordingly, we can not find this impairment to be disabling.

Plaintiff's reported activities also undermine her claim for disability. On paperwork she completed for her attorney, Plaintiff indicated that she sat one hour per day, stood and walked seven hours per day, and laid down sixteen hours per day. Tr. 184. She also reported the ability to groom herself daily; clean house, vacuum, do the laundry, grocery shop, and attend AA meetings weekly; and, dust, mop, perform yard work, handle finances, watch children, go to church, visit relatives, visit friends, talk to neighbors, and go out to eat or to the movies monthly. Tr. 185. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Clearly, these activities do not support plaintiff's claim of disability.

Perhaps the most damaging, however, is the fact that Plaintiff remained able to engage in work activity at the Mountain Home Public Schools, even after her alleged onset date. Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir.2005); *Gowell v. Apfel,* 242 F.3d 793, 798 (8th Cir.2001). And, although this activity did not rise to the level of substantial gainful activity, it did evidence her ability to perform some work-like activities. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are

15

able to do more work than you actually did. We will consider all of the medical and vocational evidence in your file to determine whether or not you have the ability to engage in substantial gainful activity.").

Therefore, although it is clear that plaintiff suffers from some degree of impairment, she has not established that she is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We next turn to the ALJ's determination that plaintiff had the physical RFC to perform light work involving occasional climbing ramps and stairs, stooping, bending, crouching, crawling, kneeling, and balancing and no exposure to concentrated dust, fumes, smoke, chemicals, and noxious gases. Tr. 72-76. From a mental perspective, Plaintiff was also limited to the performance of jobs involving few variables that required non-complex and simple instructions; little judgment; concrete, direct, and specific supervision; routine and repetitive tasks that could be learned by rote; and, involved only superficial contact with the public and co-workers incidental to the work performed. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005);

16

*Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, the ALJ carefully reviewed the medical records, plaintiff's subjective complaints, plaintiff's testimony regarding her daily activities, and the functional limitations set forth by the physicians. On January 31, 2007, Dr. Bill Payne completed a physical RFC assessment. Tr. 247-254. After reviewing Plaintiff's medical records, he concluded Plaintiff could perform medium level work. Tr. 247-254. This assessment was affirmed by Dr. Steve Owens on May 18, 2007. Tr. 266.

Plaintiff contends that the ALJ erred by not giving Dr. Long's opinion significant weight. However, her argument fails for two reasons. First, Dr. Long never opined that Plaintiff was disabled. In fact, he stated that she was capable of performing some work, but would experience "flare-ups" of her pain that would incapacitate her for several days at a time. Tr. 227. In looking back over her treatment records with him, we note that she did not seek out chiropractic treatment on a consistent basis. She sought treatment on many occasions between May and July 2006. Tr. 231-246. However, no further treatment was sought until October 2006, at which time she was treated twice, and then no treatment was again sought until January 2007. Tr. 228-231, 244-246. Plaintiff then waited until November 2007 to obtain additional chiropractic treatment, and only

17

obtained treatment on three occasions at this time. Tr. 289-294. Dr. Long's assessment does not seem to be consistent with his own sporadic treatment notes.

Second , Dr. Long is a chiropractor and is not considered an acceptable medical source. Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. 20 C.F.R. §§ 404.1513(a), 416.913(a) (2007). According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources. 20 C.F.R. §§ 404.1527(a)(2), (d) and 416.927(a)(2), (d) (2007). Therefore, given that Dr. Long is not an acceptable medical source, his assessment was not entitled to receive the same weight as that of a treating doctor.

For the reasons previously stated, we also find fault with Plaintiff's argument that the ALJ failed to properly consider Dr. Smith's assessment. And, we also find no merit in her contention that a consultative examination should have been ordered to evaluate her mood disorder. The evidence makes clear that her condition responded to medication. It is also remarkable to note that she never sought out mental health treatment nor consistently complained of mental impairments. As such, we do not find the ALJ's failure to order a consultative exam to be fatal.

After reviewing all of the evidence of record, we do believe that Plaintiff's physical limitations were more restrictive than those concluded by the non-examining, consultative examiner. Given her MRI results, it does seem reasonable that Plaintiff would be limited to a range of light work. Accordingly, we find that the ALJ's RFC assessment is supported by substantial evidence.

18

We also find that substantial evidence supports the ALJ's finding that plaintiff can still perform work that exists in the national economy. The vocational expert ("VE") testified that an individual with Plaintiff's RFC could perform work as a housekeeper, poultry eviscerator, and deboner. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Given that the hypothetical question posed to the VE contained all of the limitations the ALJ found to be credible, we can find no error in ALJ's reliance on this testimony.

V.    **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus recommends that the decision be affirmed, and plaintiff's Complaint be dismissed with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 18th day of May 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)